## In re WAR RISK INSURANCE, ATTORNEYS' FEES.

Nos. 515, 1356, 1384, 1390.

District Court, D. Montana.

Aug. 12, 1931.

Molumby, Busha & Greenan, of Great Falls, Mont., for plaintiffs in Nos. 515, 1356, and 1384.

Smith, Mahan & Smith, of Helena, Mont., for plaintiff in No. 1390.

Wellington D. Rankin, U. S. Atty., and D. D. Evans, both of Helena, Mont., for defendant in all cases.

BOURQUIN, District Judge.

The statute (section 551, title 38 USCA) provides that in these war risk insurance cases the court "shall determine and allow reasonable fees for the attorneys of the successful party * * * not to exceed 10 per centum of the amount recovered," any attempt to contract otherwise, a misdemeanor.

In the complaints herein prepared by counsel (Molumby, Busha & Greenan, and Smith, Mahan & Smith) plaintiffs are made to say that the full 10 per cent. for counsel will be no more than reasonable.

The recovery was $6,800 to $7,500, the balance of the $10,000 policies in due time to be paid if plaintiffs' condition does not change.

The court was not moved to determine and allow fees, but, in the form of judgments later presented, it appears that the court determined and allowed 10 per cent. as reasonable, which were expected to be signed on the dotted line.

It happens the writer has chronic antipathy to useless acts and usurpation and burden of mere clerical functions; so, since neither common law nor statute requires the judge to sign judgments, the practice is the clerk does.

One was thus signed, two met demurrer by the clerk who referred them to the judge who fixed the fees at $500, and one still pends. Later, counsel (Busha) appeared in chambers "to talk about it," and was dissuaded by the reminder that in court he might move as desired. These motions to determine and allow fees in the four cases followed and have been heard.

In behalf of their pleas for the full statutory 10 per cent., counsel (Molumby)

urges, in substance, that the law of war risk insurance is novel, intricate, abstruse, and difficult; that therein they are pioneering and blazing trail for all who may come after; that profound study and superior ability are necessary to thread the maze, to follow the rainbow, to arrive at the pot of gold at the journey's end; that therein they have become specialists (that is, know a lot about a little, in contrast to general practitioners who know a little about a lot), and their fame extends afar; that, in consequence, the insured have beaten a trail to their office doors, and less talented counsel solicit their services; that their compensation is contingent on success, plaintiffs agreeing it shall be 10 per cent. of the recovery if the court can be induced to allow it; that visiting plaintiffs and witnesses in remote places, and advances, require counsel to expend much time and money, even $200 in a single case; and that, in addition to strenuous trial before a jury, may be necessary to litigate in the Circuit Court of Appeals and the Supreme Court, all for 10 per cent.

It appears that on the eve of expiration of the last congressional extension of limitations (July 3, 1931) in behalf of those of status like to plaintiffs (viz., soldiers who, discharged in 1919, ceased payments of premiums, abandoned their policies, and years after awakened to possibilities, bring suit on the theory that at time of abandonment and all time hitherto they were and now are totally and permanently disabled), some 230 like cases, 200 of them by counsel herein, were simultaneously commenced.

Before the amendment of the statute in 1925, counsel were free to secure all of the recovery the plaintiff could be induced to grant. The abuses inspired Congress, largely of the legal profession, to the present restriction; and it imposed upon the court the duty as next friend or guardian ad litem of the soldier, to protect his interests from any avarice of counsel.

During the trial the court's duty is to hold the scales of justice in even balance between the soldier and the nation he sues, but after trial, if the soldier recovers, likewise between him and his erstwhile counsel, but now his adversary so far as fees are concerned. Without enlarging upon all that must be taken into account in determining the value of counsel's services, it is observed that these cases present a single and simple issue of fact, viz., in 1919 when the soldier ceased premiums and abandoned his policy, and at all times hitherto, was he totally and permanently disabled and is he now.

The law involved is likewise simple and clear.

The Veterans' Bureau, having rejected the claim, has made its record, and it would be folly to blink the facts that, though it assumes to defend the suit, it does little to investigate, prepare, present, its defense is hardly worthy of the name, the plaintiff has it pretty much his own way, juries are "human," and the verdict goes against the United States almost as a matter of course.

The pioneer of all these cases is Law's Case, 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401, begun, tried, appealed, and won by a mere law student of limited education, or, more properly speaking, of limited schooling (for between education and the extravagant and wasteful schooling of to-day is a chasm all that Mercutio's wound was not), which well illustrates the simplicity of the issue of fact, of law, and of presentation of both. Of these at bar, none required a day to try. However much may be conceded to counsel's tribute to the talent of himself and colleagues, his catalogue of difficulties, study, labor, special attributes, etc., in these cases involved, albeit, with sober mien presented, must be taken cum grano salis. Doubtless was no intent to insult the intelligence of and bamboozle the court. More likely, it was conceived the judge might amiably assume to credit it all, forget fact, duty, justice, concede all counsel asks, and yet save the face of the court.

Of course these motions are not opposed. Counsel having procured plaintiffs to agree to 10 per cent. (an agreement invalid and worthless), in the complaints by allegation superfluous otherwise having committed plaintiffs to 10 per cent., the latter are easily persuaded to acquiesce now. And that is the reason Congress stipulated that the court now represent the soldier, protect him against counsel, against any contract wheedled out of him, even against his present judgment by counsel influenced.

It is believed, however, that counsel's reminder the statutory 10 per cent. is by Congress intended to compensate for services in this court, the Circuit Court of Appeals, and the Supreme Court, is timely.

Doubtless Congress assumed due apportionment would be made as it ought to be made. Hence, in each of these cases, the order is that for services in the trial court 5

per cent. is determined and allowed as reasonable fees for counsel, that for services, if any in the Circuit Court of Appeals, 2½ per cent. likewise, and for services, if any, in the Supreme Court, likewise 2½ per cent.

Advances by way of loan made by counsel may draw interest, but are of no account in the matter of fees for services rendered.

Orders accordingly.